172 So. 892

**STATE v. TUSCALOOSA COUNTY et al.**

**6 Div. 87.**

Supreme Court of Alabama.

Feb. 18, 1937.

Rehearing Denied March 18, 1937.

A. A. Carmichael, Atty. Gen., and Jas. L. Screws, Asst. Atty. Gen., for the State.

Foster, Rice & Foster, of Tuscaloosa, for appellees.

BOULDIN, Justice.

This is a proceeding by the State of Alabama v. Tuscaloosa County, Ala., et al., under the declaratory judgment statute

**612**

(Gen.Acts 1935, p. 777) to determine whether the county is under legal obligation to reimburse the State for the expenses incurred in auditing the accounts, books, and records of the county superintendent of education and the county treasurer of school funds of Tuscaloosa County. The audit was made February 18 to March 30, 1935, covering a three-year period (July 1, 1929, to June 30, 1932) of the records examined.·

Admittedly, the governing statute, to be construed in connection with related statutes, is section 749 of the Code of 1923, which reads:

*"Expense account against county; how audited and paid.*—Immediately after the completion of an examination of the several county officers, which shall be made at the same time that examinations are made for the state, the examiners making such examination shall make out an account, under oath, for and in the name of the state, against said·county, for approximately the number of days engaged in the county examination for such county at the same rate of pay and expense allowed for state work, and file the same with the clerk of the board of revenue, court of county commissioners or courts of like jurisdiction of said county, and also file a duplicate thereof with the state auditor, and the state auditor shall thereupon draw his warrant upon the county treasurer for said amount, and the county treasurer, immediately upon receipt of the auditor's warrant, shall pay the said amount into the state treasury out of the first county funds coming into his possession."

The State, on appeal, insists that the county superintendent of education and county treasurer of school funds are "county officers," and because they are such the county is liable for the demands in question. They are styled "county" officials in the laws creating same. The county superintendent of education, as the office existed in 1901, is listed among county officers removable by impeachment under section 175· of the Constitution. See Petree et al. v. McMurray, 210 Ala. 639, 98 So. 782. Both are listed among "county officials" under the statute relating to bonds of county officials, etc. General Acts, Extra Sess., 1933, p. 203, § 2. That they are county officers in the sense that their official functions are confined to the territorial limits of the county is not questionable. But whether they are *officers of the* county, performing official ·functions for which counties exist, as local government entities, is another and different question. ·County Board of Education v. Slaughter, 230 Ala. 229, 160 So. 758.

But the solution of the question before us does not turn on whether these officers are to be classed as "county officers." Code, § 749, by its own terms, recognizes that county officers, strictly so-called, those performing official services for the county, as such, come into possession of funds belonging to the State, and also funds belonging to the county.

The powers and duties of examiners defined in the same chapter extend to examination of the books of "all county or local school or other district officers" charged with the duty of collecting or disbursing any funds "belonging to either the state or any county of the ·state." Code, § 736, subd. 2.

Examiners are required to make separate reports on their findings "in state matters" and "on county work." Code, § 746.

Section 749 does not contemplate refunding to the State the expense of examining records of "county officers," but only for the time engaged "in the county *examination for such county.*" (Italics supplied.) What is meant by these words is the real question at issue.

A county is a local governmental subdivision with such governmental powers as are conferred by law. Pursuant to law, it has a governing body to whom is delegated certain legislative, executive, and judicial powers. Among these is the power to levy taxes for county purposes. The county is expressly declared a body corporate. Code, § 181. As a legal entity, it owns property, makes contracts, may sue and be sued.

The funds derived from taxes levied for county purposes belong to, are the property of, the county. The county purposes to which they are devoted are specially designated by law or by order of the governing body pursuant to law.

The custodian of county funds is a county treasurer, or county depository, named by the board of revenue, or other governing body.

Clearly enough on the examination of the books of any county officer having duties with reference to the collection and disbursement of these county funds, such portion of the examination as concerns the

fidelity of the officer with regard to these funds would be a "county examination for such county."

The county superintendent of education and county treasurer of school funds are officers in another and different governmental set-up.

Our free school system in Alabama, in concept, and largely in legal structure, is the outgrowth of article 14 of the Constitution of 1901, beginning with the mandate: "The legislature shall establish, organize, and maintain a liberal system of public schools throughout the state for the benefit of the children thereof between the ages of seven and twenty-one years." Section 256, Constitution 1901.

"The supervision of the public schools shall be vested in a superintendent of education, whose powers, duties, and compensation shall be fixed by law." Section 262, Constitution.

To provide means for a public school system certain funds were specifically dedicated to that purpose, among them the proceeds of a 3-mill tax levy on all the assessable property of the State. Constitution, § 260.

The county was designated as the territorial unit in the allocation of such common school funds on the basis of the number of children of school age therein; with provision that, by some authority, a new apportionment should be made among the several schools in the county so as to provide, as nearly as practicable, school terms of equal duration in the several districts.

Following this lead the Legislature has, by a system of laws, found in the School Code of 1927 and later acts, created a statewide educational organization, quite apart from county organization, as such.

A county board of education, under State supervision, is given numerous powers set out in article 6 of the School Code, § 86 et seq. Among these is the power to appoint a county superintendent of education, who shall be the executive officer and secretary of the county board of education. School Code, § 138.

This board also appoints the county treasurer of school funds, who has custody of all school funds which accrue to the county for school purposes, and disburses same on order of the county board of education. School Code, § 94.

The funds which come to his hands include State funds allocated to the county, and also, 3-mill county and district funds levied under amendment to the Constitution. The county authorities, we may note, do not levy these local taxes, but they are levied by direct vote of the people. The county may, but is not required to appropriate funds to public schools. All these funds are "vested' in the county board of education. School Code, § 95.

This board fixes the amount of the bonds of both the county superintendent of education and the county treasurer of school funds, within limits prescribed by law, and approves such bonds. General Acts, Ex. Sess., 1933, p. 203, § 2.

The county board of education is a legal entity, with power to make contracts, own property, exercise the power of eminent domain, sue and be sued. School Code, § 132. It has been called a quasi corporation possessing the powers, and only the powers, conferred by law. County Board of Education v. Slaughter, 230 Ala. 229, 232, 160 So. 758; Dean v. County Board of Education, 210 Ala. 256, 97 So. 741; Kimmons v. Jefferson County Board of Education et al., 204 Ala. 384, 85 So. 774; Allred v. Dunn, Tax Collector, 207 Ala. 469, 93 So. 390.

"Without question, public education through a system of public schools is, by the Constitution, as well as by the statutes, a government function in Alabama; indeed, a major activity of the state government.

"County boards of education, county superintendents of education, county treasurer of public school funds, school district organizations, are all parts of the state set-up in maintaining a system of public schools throughout the state.

"In the nature of the case, schools must be located and conducted in districts where the children reside.

"Every public school is a state school, created by the state, supported by the state, supervised by the state, through state wide and local agencies, taught by teachers licensed by the state, employed by agencies of the state." Williams, Superintendent of Banks, et al. v. State, for Use and Benefit of Pickens County et al., 230 Ala. 395, 397, 161 So. 507.

It follows that public school funds, as between the county and State, are State funds. Whether the title to such funds, when coming to the custody of the county treasurer of school funds, or within the

614

official functions of the county superintendent of education, is vested in the State or in the county board of education, a State agency, created to effectuate the use of such funds for public school purposes within that territorial area, is unimportant for present purposes.

The county, through its governing body, has no interest in nor control over these funds, just as the county board of education has no interest in nor control over county funds in the custody of the county depository.

Examiners of accounts belong to another state department, formerly designated "the department of examiners of accounts" (Code, § 735), now transferred to the office of the state comptroller and known as the "division of departmental and county audits" (General Acts, Extra Sess., 1932, p. 38). They are State officials, appointed by the Governor (Code, § 739, amended Acts 1931, p. 604) with salaries and allowances for transportation and other expenses payable out of the state treasury (Code, § 741, amended General Acts 1933, Ex.Sess., p. 114, Ib. p. 128).

Section 749, quite clearly, we think, contemplates a reimbursement of the State by the county, out of funds in the county treasury, for only such portion of the State outlay as is incurred in examinations "for the county," for the safeguarding of county funds, and not for examinations safeguarding funds of the State or its agencies devoted to State enterprises, such as public school funds handled by the county superintendent of education and the county treasurer of school funds. Neither that section nor any other provision of law authorizes such reimbursement by the county board of education out of school funds. This is the all-sufficient answer to that issue.

We probably should note that some change has been made in the phraseology of the law on the questions here presented; but since the examinations here involved. Gen.Acts 1935, pp. 601, 602. We have no occasion, therefore, to construe this present statute.

The views of the trial judge, expressed in a clear and helpful opinion, are in accord with the foregoing and the judgment is free from error.

Affirmed.

ANDERSON, C. J., and GARDNER and FOSTER, JJ., concur.