22 So.2d 91
**BOARD OF SCHOOL COM'RS OF MOBILE COUNTY et al. v. HAHN.**

I Div. 232.

Supreme Court of Alabama.

May 10, 1945.

Pillans & Cowley, of Mobile, for appellants.

Johnston, McCall & Johnston, of Mobile, for appellee.

BROWN, Justice.

This appeal is from an interlocutory decree overruling the demurrer of the defendant to the bill filed by appellee against the appellant to enforce specific performance of a contract entered into by appellants with the appellee on the 26th of May, 1943, employing appellee as a teacher in the Mobile Public Schools, from September 1, 1943, to May 31, 1944, at a salary of $1540 —a period of one hundred and eighty-three days.

The bill alleges that the complainant has been continuously employed as a teacher from 1932 until the end of 1943–44 session of said public schools by appellants. That her qualifications and eligibility continues and still exists, and that, "the Board of School Commissioners of Mobile County refuses and denies her the right to continue to teach or serve as a teacher in the public schools of Mobile County, Alabama, for the present 1944–45 session thereof, although no notice in writing was given her by said board on or before the last day of the term of the 1943–44 session of said public schools of Mobile County, and not later than the first day of May 1944, of the termination of her employment as a teacher in said public schools of said County." She pleads the provisions of Chapter 13, Tit. 52, Code 1940, as extending her tenure of service as a matter of law, and alleges that, "Complainant is now and has always been ready, able and willing to comply with her contract of employment as aforesaid, and does now, as she has heretofore, offer to do so."

The demurrer takes the point that the bill does not state a cause of action (is without equity); that it shows the term of her em-

ployment ended before the bill was filed; that the legislation relied on by complainant does not govern the Board of School Commissioners of Mobile County, because of the provisions of Section 270 of the Constitution of 1901.

The circuit court overruled the demurrer, hence this appeal.

Said Section 270 is incorporated in, and a part of, Article XIV of the Constitution of 1901, beginning with Section 256 and concluding with Section 270, imposing on the legislature the duty to "Establish, organize, and maintain a liberal system of public schools throughout the state for the benefit of the children thereof between the ages of seven and twenty-one years."

The pertinent provisions of said Section 270 relied on are: "The provisions of this article and of any act of the legislature passed in pursuance thereof *to establish, organize, and maintain a system of public schools throughout the state,* shall apply to Mobile county only so far as to authorize and require the authorities designated by law to draw the portions of the funds to which said county shall be entitled for school purposes and to make reports to the superintendent of education as may be prescribed by law; and all special incomes and powers of taxation as now authorized by law for the benefit of public schools in said county shall remain undisturbed until otherwise provided by the legislature; * * *." [Italics supplied.]

By an act of "The Senate and House of Representatives of the state of Alabama," approved January 10, 1826, provisions were made for establishing and maintaining "schools in the County of Mobile" and set up a board of commissioners denominated the "Mobile School Commissioners," constituting it a body corporate with "full power and authority to establish and regulate schools and to devise, put in force, and execute such plans and devises for the increase of knowledge, educating youth, and promoting the cause of learning in said county, as to them may appear expedient." Said act conferred on said board all land grants and immunities already conferred or which may hereafter be conferred on the inhabitants of said county or of any city, town or township therein, for the purposes of education, either by the United States or the State, and placed such grants and immunities under

the direction, management and control of said commissioners. Said act also conferred on said commissioners the control of the revenues accruing to the treasurer of said county from, "An Act concerning the revenue of Mobile County" passed at the "sixth annual session of the General Assembly, from fines, penalties, and forfeitures, other than those arising under 'An Act concerning roads, highways, bridges, and ferries in Mobile County'; from the tax-fee of Two Dollars on all suits in the circuit and county courts of said county; together with twenty-five per centum of the ordinary county tax of said county"; set apart as the special fund for the endowment and support of the schools in the said County of Mobile. Said Commissioners were authorized to select certain lands situated in Mobile County in lieu of others covered by "private claims under grants of the Spanish Government, and to procure the location of the section so selected." The act conferred on the commissioners powers to select officers, including a treasurer, and fixed the number of commissioners at twenty-five. It named the commissioners and fixed their tenure at five years, and provided for their successors to be appointed by the succeeding general assemblies, and conferred on the majority of the commissioners power to fill vacancies. Section 6 of said act provides, *inter alia:* "* * * and the board shall have power to make, and put in force, such by-laws and regulations, *not inconsistent with the laws of this State* or of the United States, as to them may appear expedient, and the same to revoke, and alter, and to prosecute all suits and actions in their corporate name, in the same manner as private persons." Acts of Alabama, 1825–26, pp. 35 and 36 [Italics supplied.]

"The Senate and House of Representatives of the State of Alabama, in General Assembly convened," by the act approved February 15, 1854, provided for the establishment and maintenance of a system of free public schools in Alabama, and in Section 6 of said act provided for the election in each county by the qualified voters of two persons, who, with the judge of probate, constituted the commissioners of such schools in such county, and made provision for the administration of said system of public schools through the commissioners so established, conferring on the commissioners, among others, the following powers: "The said commissioners are also authorized to receive and take charge of any moneys, funds, or property or proceeds of any character which may be raised in their respective counties by county taxation, or may accrue to them or to the county from gift, grant, bequest, devise, endowment or otherwise—to be used in aid of or in connection with the funds set apart and appropriated by this act; etc. * * *." Acts of Alabama, 1853–54, Art. II, § 8, pp. 8 to 18, inclusive.

In Article VI, § 2, said last above named act provides: "As the county of Mobile now has established a public school system of its own, the provisions of this act shall apply to that county, only so far as to authorize and require its school commissioners to draw the portion of the funds to which that county will be entitled under this act, and to make the reports of the superintendent herein required."

In the Constitution of 1875, the substance of Article VI, § 2 of the Act of 1853–54, quoted above, was incorporated as § XI, Article XIII, and in the language as now expressed in Article XIV, § 270 of the Constitution of 1901.

After the adoption of the Constitution of 1875, which took effect on December 6, 1875 (White v. White, 230 Ala. 641, 162 So. 368), the General Assembly of Alabama repealed the Act of 1826, establishing the Board of School Commissioners of Mobile County, and established the present commission elected by the qualified electors of Mobile County, and authorized the commissioners, "so elected to elect by ballot three members of the old board"; divided the commission into three classes, and provided for their election by the qualified electors thereafter, and authorized said commissioners to elect a county superintendent. Section 5 of said act provides, inter alia: "That the said board of school commissioners shall be entitled to receive, levy, assess and collect, all devises, revenues and taxes to which they were by law entitled at the date of the organization of the Board of Education of the State of Alabama, and that they shall have full power to continue in force, revise, modify, and improve, as to them may seem fit, the public school system now existing in the county of Mobile, *and to make such by-laws, rules, and regulations not inconsistent with the laws of this State,* and of the United States, for the government of the

board and of said schools as they may deem expedient or necessary. * * *." Acts of Alabama, 1875–76, pp. 364, 365, § 5 [Italics supplied.]

By Section 7 of said act the county superintendent of education was made ex officio member and treasurer of the Board of School Commissioners and his duties prescribed. Section 7 of said act was amended by act approved September 14, 1923 (Loc. Acts 1923, p. 182), relieving the county superintendent of education of the office of treasurer of the board and of the right to collect school funds arising from taxation, and provided for his removal.

The administrative features relative to the operation of the Mobile County Public Schools were, by the Local Act of 1875–76 left to the quasi legislative power conferred on the local board, authorizing it to make regulations and by-laws, *"not inconsistent with the general laws of the state,"* thus recognizing the applicability of the general laws of the state, which do not impinge the power and authority of the local board, in respect to receiving, levying, assessing and collecting all devises, revenues and taxes to which they were by law entitled, at the date of the organization of the Board of Education of the State of Alabama, which powers are especially conferred in the law of the board's creation.

■■ The limitation on legislative power embodied in Section 270. of the Constitution is restrictive in its scope and purpose, and is to be strictly construed. As to the public schools of Mobile and Mobile County, said section intercepts the application to said schools of, not only the constitutional mandate embodied in Section 256, to establish public schools throughout the state, but the entire article of the constitution of which it is a part, and all legislation passed in pursuance thereof to establish or organize and maintain a system of public schools throughout the state, except insofar as to "authorize and require the authorities designated by law to draw the portions of the funds to which said county shall be entitled for school purposes and to make reports to the superintendent of education as [required] by law." Said section also preserves to said county, and this was its controlling thought, the existence of its local board and "all special incomes and powers of taxation as now [then] authorized by law for the benefit of public schools in said county, * * * *until otherwise*

*provided by the legislature."* Otherwise stated, the school system of said county is left open and subject to the discretion and plenary power of the legislature, without the constitutional mandate to continue its existence.

■ Chapter 113, Tit. 52, Code 1940, and the Act of 1939, p. 759, its predecessor, are not necessarily referrable to and dependent upon the provisions of Article XIV of the Constitution of 1901, which deals largely with the financial set up to maintain a liberal system of public schools. The power of the legislature to enact laws for the benefit of public employes is plenary, except as limited by the Constitution, and said Chapter 13, Tit. 52, Code 1940, can very logically be referred to the legislative power to regulate contracts of a public nature. Our conclusion, therefore, is that said Section 270 does not inhibit the application of the teacher tenure provisions of said chapter to the teachers of Mobile County. The provisions of said chapter are to be read into all contracts entered into by the school boards, and teachers, subsequent "to the fall of 1940," to be terminated as therein provided on notice and hearing. Code 1940, Tit. 52, § 352; Birmingham Bar Ass'n v. Phillips & Marsh, 239 Ala. 650, 196 So. 725; 5 Alabama Digest, p. 71, Contracts, ☞167.

Our judgment, therefore, is that the complainant, appellee, was entitled to have her contract with the board specifically enforced, and that the decree of the circuit court overruling the demurrer to her bill was without error.

Affirmed.

GARDNER, C. J., and LIVINGSTON and SIMPSON, JJ., concur.