26 So.2d 108

MORGAN, Director of Conservation, v.
BOARD OF SCHOOL COM'RS OF
MOBILE COUNTY.

I Div. 254.

Supreme Court of Alabama.

May 16, 1946.

Wm. N. McQueen, Atty. Gen., and Jas. F. Matthews, Asst. Atty. Gen., for appellant.

Palmer Pillans and Pillans & Cowley, all of Mobile, for appellee.

STAKELY, Justice.

The question for decision is whether the Board of School Commissioners of Mobile County or the Director of Conservation has the right to the control, direction and management of school lands in Mobile County. The question is presented by a bill in equity, filed by the Board of School Commissioners (appellee), seeking a declaratory judgment. The bill of complaint sets forth the various statutes and constitutional provisions, which must be interpreted in order to solve the problem, and which have produced the controversy. The answer of the Director of Conservation (appellant) admits the allegations of fact contained in the bill, but denies its legal conclusions. The cause was submitted for final decree on "the pleadings" with the result that the court rendered a decree declaring in effect that the Board of School Commissioners of Mobile County has the right to the direction, control and management of school lands in Mobile County. This appeal is from that decree.

Since 1826 appellee, under various names given it by various statutes, has continuously conducted, maintained and operated the public schools of Mobile County and has controlled, managed and operated school properties in Mobile County. By Act approved December 19, 1836, Acts 1836, p. 48, the direction, management and control of school lands in Mobile County was placed in appellee. We quote from that act as follows:

"Sec. 2. And, be it further enacted, That all lands granted and immunities already conferred or which may hereafter be conferred on the inhabitants of said county, or any city, town or township therein for purposes of education, either by the United States, this State or otherwise, shall be and the same are hereby placed under the direction, management and control of said Commissioners. Provided, That nothing therein contained shall empower said Commissioners to appropriate any of the funds arising from the sixteenth sections, to any other purpose than the support of schools in the township in which such sixteenth sections may be situated."

By Act approved January 16, 1854, Acts 1853–54, p. 190, the Legislature of Alabama reaffirmed that the control, direction and management of school lands in Mobile County was in appellee in the following language contained in Section 2 of the Act:

"All lands, grants and immunities already conferred, or which may hereafter be conferred upon the inhabitants of said County, or any city, town or township therein, for purposes of education, either by the United States, this State, or otherwise, shall be under the control, direction and management of said Commissioners; * * *."

By virtue of the Act of Congress, 3 Stat. 489, admitting Alabama as a state in 1819 and the acceptance of that act, with its provisions and conditions, there was made effective a grant from the United States "to the inhabitants of such townships for the

use of schools" of the sixteenth sections in each township. Section 6, subd. 1. Where for appropriate reasons, sixteenth section lands were not available, there was provision in the act for lieu lands. It will be seen that under both of the foregoing acts direction, management and control of such lands were conferred on appellee by the Legislature of Alabama.

By Act of February 15, 1854, Acts 1853–54, p. 8, the State of Alabama set up its first comprehensive school system. It should be noted that at that time the County of Mobile had been operating its system of public schools for twenty-eight years. The Legislature recognized this situation by providing in Section 2 of Article VI, as follows:

"As the county of Mobile now has established a public school system of its own, the provisions of this Act shall apply to that county, only so far as to authorize and require its school commissioners to draw the portion of the funds to which that county will be entitled under this Act and to make the reports of the superintendent herein required."

In 1875 the settled policy of taking Mobile County out from the general scheme of public school legislation was written into the Constitution of Alabama of 1875 as Section 11 of Article XII. The same constitutional provision was carried forward without substantial change into the Constitution of 1901, where it forms Section 270 of Article XIV, the Article on Education. Section 270 of the Constitution of 1901 is as follows:

"Section 270. The provisions of this article and of any act of the Legislature passed in pursuance thereof to establish, organize and maintain a system of public schools throughout the State, shall apply to Mobile county only so far as to authorize and require the authorities designated by law · to draw the portion of the funds to which said county will be entitled for school purposes and to make reports to the Superintendent of Education, as may be prescribed by law; and all special incomes and powers of taxation as now authorized by law for the benefit of public schools in said county shall remain undisturbed until other-

wise provided by the Legislature; provided, that separate schools for each race shall always be maintained by said school authorities."

On September 22, 1939, General Acts 1939, p. 949, there was approved an Act to confer upon the Department of Conservation "the complete management of and supervision over" certain public lands, including school lands. The section of the Act which vests the management of school lands in the Director of Conservation is as follows:

"Section 1. The Director of Conservation is hereby expressly authorized and empowered to have complete management of, and supervision over, lands which are known as school lands, as defined by Section 629 of the 1927 Alabama School Code; which lands are vested in, or which may hereafter be vested in, the State of Alabama in trust for the use of schools."

The aforesaid Act of 1939 also contains a repealer clause as follows:

"Section 23. All laws or parts of laws, whether general, local or special in conflict with any of the provisions of this Act are hereby expressly repealed."

The aforesaid Act of 1939 was subsequently codified and appears as §§ 232–252, Title 8, Code of 1940.

The Director of Conservation asserts the position that the aforesaid local acts applicable to school lands in Mobile County were repealed by the repealer clause in the Act of 1939 and that the Act of 1939 gives him the right and imposes on him the duty to manage and control the school lands of Mobile County. The Board of School Commissioners of Mobile County, on the contrary, assert that the direction, management and control of such lands under the aforesaid local acts is preserved to it under the provisions of section 270 of the Constitution of 1901. It seems to be conceded by appellee and we think properly so, that, omitting consideration of Section 270 of the Constitution of 1901, the repealer clause of the Act of 1939 would repeal the local acts so far as direction, control and management of school lands in Mobile County is concerned, because there appears to be no doubt of a legislative intent to put all sixteenth

section school lands throughout the state under control of the Director of Conservation. Shepherd v. Clements, 224 Ala. 1, 141 So. 255, 256.

This brings us to the point, except for a preliminary question of procedure, where we must see if the local acts conferring direction, management and control of school lands in Mobile County, have been saved by Section 270 of the Constitution of 1901.

■■■ It is insisted by appellant that appellee was not entitled to a declaratory judgment, for the reason that the petition or bill of complaint only sought an advisory opinion as to whether certain legislation repealed or otherwise affected prior legislation and no specific or express relief was sought with reference to any transaction or dispute set forth in the petition or bill of complaint. Our cases point out, however, that the declaratory judgment statute will be extended to cases involving public rights or important public matters and to controversies in which the legality of action of public officials or public agencies is challenged. We have said in effect that where official action done or threatened is challenged as unlawful, whether the lack of authority appears in the provisions of a statute or because of its unconstitutionality, the controversy can be determined under the declaratory judgment statute rather than force the parties to seek injunctive relief. Donoghue v. Bunkley, Comm'r. of Licenses, Ala.Sup., 25 So.2d 61;[1] State v. Inman, 238 Ala. 555, 191 So. 224; State v. Tuscaloosa County, 233 Ala. 611, 172 So. 892; Lang v. City of Mobile, 239 Ala. 331, 195 So. 248; Scott v. Alabama Bridge Corp., 233 Ala. 12, 169 So. 273.

■■■ In addition to the historical background shown by the foregoing enactments, the words of the members of the Constitutional Convention of 1901 uttered on the floor of the convention are helpful in arriving at a correct construction of Section 270 of the Constitution of 1901. Louisville & N. R. Co. v. State, 201 Ala. 317, 78 So. 93; Board of Revenue of Jefferson County et al. v. Kayser, 205 Ala. 289, 88 So. 19.

On motion to adopt Section 13 of the Article as reported favorably by the Committee on Education—this is § 270 of the Constitution of 1901—Mr. Long, in speaking for the motion said:

"* * * We are not here to take away from Mobile the right given her in the past and which she has by the Constitution of 1875 * * *. It is not a question of sustaining the magnificent public schools in Mobile, but it is a question of tearing down that system and putting it in the Constitution of our State that Mobile shall not be entitled to certain privileges that have been given to her and which have existed since 1852. * * * I am the last man that would stand upon this floor and say it is right to take away from Mobile that principle of self government, that property and license tax that she has had since 1852 because we don't have it."

Speaking in favor of the same motion, Mr. Smith, in part, said:

"* * * Mr. President there has been for some reason a concensus of opinion among the representatives of the various sections of Alabama, since 1854 at least, in the fact that there was some good reason why the county of Mobile should enjoy this exemption and if I knew nothing of the history of the surrounding circumstances of the matter I should be inclined to think, after so many men of ability, representing the people of the State through so long a period of years had assented to its propriety, that there must be some justice or some equity in the claim or it would not have been so universally conceded, but, Mr. President, the Mobile school system, which is separate and distinct from any other school system in the State of Alabama, has its birth long before there was any such thing as a school system in any other portion of the State. It was originated as a public school system before any other such system was known to the State. Money was expended by her people in the erection of buildings and in the creation of the system that has acted as a stimulant and as an object lesson to the rest of the State.

---

[1] 247 Ala. 423.

"Mobile erected at very considerable expense, which was wholly independent of any contribution from the state, buildings of considerable magnitude and has instituted and created a system that has done credit to our State from its inception. * * *."

Coming more directly to the general arrangement of Section 270 of the Constitution of 1901 and to its language, we think it clear that the section should be analyzed as being divided into three parts.

(1) A restriction that the legislature may not apply to Mobile County any general public school legislation on the subjects embraced in Article XIV of the Constitution of 1901, except so far as it provides for Mobile County to get its share of the general public school funds, and to require the local school authorities to make such reports to the superintendent of education as may be prescribed by law.

(2) A restriction that any special income and power of taxation as authorized by law for the benefit of the public schools of Mobile County at the time of the adoption of the constitution shall not be disturbed until otherwise provided by the legislature.

(3) A mandatory direction that separate schools shall always be maintained for each race.

From time to time this court has referred to the general principle embodied in Section 270 of the Constitution of 1901. Just three years after the adoption of the Constitution of 1901 and with the contemporary understanding of that document which can be ascribed to this court, this court, in declaring what is general law and what is local law within the meaning of the Constitution of 1901, said:

"We could not pass (if the position urged against the law were sound) any general law to protect the pine forests of Alabama, because there are no pine forests in some of the counties; we could not legislate in regard to the public schools in the counties of Alabama, because Mobile county is, by the Constitution, excepted from the provisions of any such act * * *." State ex rel. Covington v. Thompson, 142 Ala. 98, 38 So. 679, 682.

Later on in the case of Tucker v. State ex rel. Poole, 231 Ala. 350, 356, 165 So. 249, 253, the present Chief Justice said:

"Nor do we understand that a consideration of section 270 adds weight to such insistence, as this is merely a provision designed especially to exempt the county of Mobile that it may continue with its separate and distinct school system."

Recently this court in the case of Board of School Comm'rs of Mobile County v. Hahn, 246 Ala. 662, 665, 22 So.2d 91, had before it the question of whether or not the provisions of Chapter 13, Title 52, Code of 1940, providing for tenure of service for teachers, were prevented from having application to Mobile County by the provisions of Section 270 of the Constitution of 1901. We have often said that a decision of this court must be read and interpreted in the light of the facts in the particular case and that general statements in the opinion should not be taken alone apart from their context. In that case special consideration and emphasis was laid on the fact that the complainant was a public employee and that the case involved the power of the legislature to enact laws for the benefit of a public employee. The court held that the act there under consideration, a general law, was not passed in pursuance to Article XIV of the Constitution of 1901, and therefore did not infringe upon the exemption given by § 270. The facts in that case did not present a situation which involved any question relating to management of public school lands of Mobile County or the special income therefrom to which the public schools of Mobile County must look for support.

We think it is clear that the portion of § 270 which we have designated as part (1) does not permit the Act of 1939 to repeal the Local Acts of 1836 and 1854, because the Act of 1939 is a general law and to the extent that it embraces the control and management of sixteenth section lands, was clearly passed pursuant to Article XIV of the Constitution of 1901. Sections 257 and 260 of Article XIV refer specifically to sixteenth section school lands and the income therefrom. Since the Act of 1939 deals with school lands and the in-

come therefrom, it was obviously enacted pursuant to Article XIV.

And so we can narrow the question to a consideration of part (2) of section 270. To consider properly part (2) of section 270, we should first try to understand the meaning of the expression "special incomes and powers of taxation." We are aided here by counsel for appellee who concede that "special incomes" include income derived from school lands. They point out that in the aforesaid Act of 1836, the legislature set up a number of sources of special income. The first is that provided in section 2 of the act, which is the section that places in the Mobile School Commissioners the direction, management and control of the school lands in the county. Then, in Section 9, is a provision for the payment of sundry excise taxes; and in section 10 provision for certain other local revenue. The Act of 1854 repealed the various revenue provisions of the Act of 1836, except the revenue from sixteenth section lands, and provided at length for other enumerated sources of special income through taxation.

In considering part (2) of Section 270, can we say that the direction, management and control of school lands in Mobile County can be taken from appellee and given to appellant by a general law enacted pursuant to Article XIV of the Constitution of 1901? We do not think so because such construction would nullify the purpose of part (1) of § 270, which is to exempt Mobile County from general public school legislation, except in matters not here pertinent. If this be so, where then is the field for operation of part (2) of section 270? The answer, which seems to us to be reasonable, is that the income from school lands in Mobile County can be disturbed, with resulting change in the administration of the lands, by the legislature only by local law, since such law will not be pursuant to Article XIV of the Constitution of 1901. To emphasize this idea we quote again the opening words of § 270: "The provisions of this article and of any act of the Legislature passed in pursuance thereof to establish, organize and maintain a system of public schools throughout the State, shall apply to Mobile county only," etc. This is in accordance with the meaning of our decision in Board of School Commissioners v. Hahn, supra.

We conclude that the Local Acts of December 19, 1836, and January 16, 1854, stand unimpaired by the General Act of September 22, 1939, and the codification thereof in the Code of Alabama of 1940, and the Board of School Commissioners of Mobile County has the right to the direction, management and control of the school lands in Mobile County. In view of this conclusion it is not necessary to discuss other points in the case. The decree of the lower court is free from error and is affirmed.

Affirmed.

All the Justices concur except LAWSON, J., not sitting.