331 So.2d 647 (1976)
MOBILE, ALABAMA-PENSACOLA, FLORIDA BUILDING AND CONSTRUCTION TRADES COUNCIL, etc., et al.
v.
Robert R. WILLIAMS, etc., et al.
SC 1486.
Supreme Court of Alabama.
April 9, 1976.
Rehearing Denied May 21, 1976.
Collins, Galloway & Smith, Mobile, for appellants.
Abram L. Philips, Jr. and Victor T. Hudson, Wm. H. Armbrecht, III, Mobile, for John P. Case & Co., Inc.
Allen Poppleton, James P. Alexander and Alan K. Zeigler, Birmingham, for Associated Builders & Contractors of Ala., Inc., amicus curiae.
*648 SHORES, Justice.
Do §§ 375(8)-(24) of Title 26, Code, dealing with minimum wages under public works contracts in excess of $2,000 apply to the Mobile Board of School Commissioners' contract for the construction of the Hall-Rain Middle School? We find these sections applicable and, therefore, reverse.
Declaration of Policy in the "Minimum Wages Under Public Works Contracts" Act, Title 26, § 375(8), sets guidelines for the application of the Act. § 375(8) reads:
"It is hereby declared to be the public policy of this state that the state of Alabama or any state agency, department or board thereof which is the contracting authority for construction, alteration and/or repairs to be performed on state-owned properties or to be state financed, in whole or in part, to be performed by private contractors; shall require the successful bidder to pay the prevailing wage in the work area to their employee."
The trial court held that the Act was not applicable to the construction of the Hall-Rain Middle School for two reasons.
First, the Hall-Rain Middle School is not a "public work" as defined in Title 26, § 375(9)(e), Code:
"Public work means construction, reconstruction, demolition, alteration, or repair work, or maintenance work, including painting and decorating, done under contract and paid for in whole or in part out of the funds of the state of Alabama."
Second, the Board is not a "contracting authority" as defined in Title 26, § 375(9)(f):
"Contracting authority means any officer, board or commission of the state or any state institution supported in whole or in part by state funds, authorized to enter into a contract for a public work."
We reverse the holding of the trial court and hold that the minimum wage requirements of §§ 375(8)-(24) are applicable to the contract entered into by the Mobile Board of School Commissioners.

I. "Public Works" Finding
The only testimony offered by either party was the deposition of Kenneth Lambert, Treasurer of the Board of School Commissioners of Mobile County. He testified that the funds used to build Hall-Rain Middle School came wholly from county taxes and from proceeds received from the sale of warrants by the Mobile Board of School Commissioners. The school board argues this testimony establishes that the construction of the school was not a "public work" within the meaning of Title 26, §§ 375(8)-(24), because it was not "paid for in whole or in part out of the funds of the state of Alabama." We cannot agree with the contention of the school board.
Although it is true that through accounting procedures monies can be categorized and earmarked for specific projects, the fact remains that county boards of education are supported by state funds and that state funds granted by the legislature pursuant to Art. 14, § 270, and Amendment 111 of the Constitution of Alabama 1901, form an enormous portion of the total of county education expenditure. In Williams v. State, 230 Ala. 395, 161 So. 507 (1935), this court decided that public school funds held in bankrupt banks were state funds whether they came from the state treasurer or local taxation. As Williams observed:
". . .A loss of such [local] funds would cripple the state school enterprise, just as the loss of any other school funds. . . .
"It is of no moment that the taxes are paid by local subdivisions, earmarked for the schools in which the taxpayers are *649 directly interested, and designated as county and district funds; nor that local custodians and administrative agencies with corporate powers are made a part of the state educational set-up." (230 Ala. at 397, 161 So. at 508)
In the case of State v. Tuscaloosa County, 233 Ala. 611, 172 So. 892 (1937), this court reiterated the holding of Williams and stated that ". . . public School funds, as between the county and the State, are State funds." (233 Ala. at 613, 172 So. at 894). We find that the Williams and the Tuscaloosa cases, although they arose in quite different factual contexts from the instant case, answer the question involved in this case. We cannot allow the legislative will to be circumvented by accounting procedures.

II. "Contracting Authority" Finding
Since we have determined that the funds used to construct the Hall-Rain Middle School were funds of the State of Alabama, we must now determine whether the Board of School Commissioners of Mobile County is a "contracting authority" for the construction of the school.
Is the school board an ". . . officer, board or commission of the state or any state institution supported in whole or in part by state funds, authorized to enter into a contract for a public work?" (Emphasis added) We conclude that it is.
In making this determination, we are compelled to construe these statutes so as to give effect to the legislative purpose and intent behind them. State v. AAA Motor Lines, Inc., 275 Ala. 405, 155 So.2d 509 (1963). An examination of the nature of the constitutional and statutory scheme of public education in Alabama will aid us in determining the intent of the legislature.
The constitutional provision establishing a public education system in Alabama is Constitution of Alabama 1901, § 256, as amended by Amendment 111 § 256 originally required the legislature to establish, organize, and maintain a liberal system of public schools in Alabama, thus placing the primary responsibility for providing education upon the state government. Primarily, Amendment 111 modified the original educational provision to eliminate any implication that there is a constitutional right to public education in Alabama.
Nevertheless, we are aware that the primary responsibility for providing public education still resides in the State Legislature. The supervision of the public school system is vested in the Superintendent of Education, § 262, Constitution of Alabama 1901. The Superintendent of Education is a member of the executive department of the state government, § 112, Constitution of Alabama 1901. The Constitution provides that the powers and duties of the State Superintendent shall be fixed by law, § 262, Constitution of Alabama 1901. Pursuant to this constitutional grant of power, the State Legislature has divided administrative and supervisory control of the public school system between the state government and local governing units (primarily the counties).
At the state level, the legislature has created a State Board of Education which exercises a general control and supervision of the school system through the State Superintendent, Title 52, § 14, Code. The State Board has the power to promulgate rules governing the review by the State Superintendent of the actions and orders of local boards of education in matters relating to finance and other matters seriously affecting educational interest, Title 52, § 34.
On the local level, the legislature has established a comprehensive system of county boards of education, Title 52, §§ 62-101, Code. The general administration and supervision of the public schools and the educational interests of each county is vested in the county board of education, Title 52, § 62, Code. The county boards have the power to hold real property for school purposes, to sue, and to contract, Title 52, § 99, Code.
*650 This court has interpreted the constitutional and statutory scheme of public education to mean that the county boards are quasi-corporations and they are not such immediate and strict governmental agencies of the state as to come within the protection of § 14 of the Constitution. Ex parte Board of School Com'rs of Mobile County, 230 Ala. 304, 161 So. 108 (1935); Turk v. County Board of Education, 222 Ala. 177, 131 So. 436 (1930). Specifically interpreting the statutory power of county boards to contract (Title 52, § 99, Code), this court has also held that neither the State Board nor the State Superintendent needs to approve contracts entered into by the county boards even though funds which are controlled by the State Superintendent and the State Board may be involved. Madison County Board of Education v. Wigley, 288 Ala. 202, 259 So.2d 233 (1972).
We find that the state legislature has consistently acknowledged its responsibility to provide public education in Alabama and exercise general control and supervision over it. Moreover, we find the same rationale earlier expressed to the effect that funds used for construction of schools are state funds as contemplated by the statute, forces us to conclude the county school boards are "state institutions" within the meaning of this statute. Additionally, we note that in the bill as originally introduced, the Director of Labor would have had the sole authority to set the prevailing wage rate, but the bill which finally passed established a commission, with the State Superintendent of Education as a member to establish this rate. This certainly suggests that school construction was contemplated by the statute.
There is no question but that the School Board is supported by state funds. The Board also has the authority to contract as we have noted. Title 52, § 99. We think it clear that the Board is a "contracting authority" as contemplated by the statute.
This is not to say that every political subdivision is an agency for this purpose. § 375(23) clearly provides that any municipality or other local political subdivision "not otherwise covered by this article" may elect to use the prevailing wage determined by the commission. We merely conclude that county school boards are otherwise covered by this article.
The appellees insist that § 270 of the Constitution of Alabama 1901 exempts the Mobile County School Board from the state educational system, since it is made independent of the state school system and thus is not an "agency, department or board within the meaning of the act."
§ 270, as amended by Amendment 111, reads:
"The provisions of this article and of any act of the legislature passed in pursuance thereof for educational purposes, shall apply to Mobile county only so far as to authorize and require the authorities designated by law to draw the portions of the funds to which said county shall be entitled for school purposes and to make reports to the superintendent of education as may be prescribed by law; and all special incomes and powers of taxation as now authorized by law for the benefit of public schools in said county shall remain undisturbed until otherwise provided by the legislature."
This court, in Morgan v. Board of School Com'rs of Mobile County, 248 Ala. 22, 26 So.2d 108 (1946), analyzed § 270 into three parts, two of which are currently applicable:
"(1) A restriction that the legislature may not apply to Mobile County any general public school legislation on the subjects embraced in Article XIV of the Constitution of 1901, except so far as it provides for Mobile County to get its share of the general public school funds, and to require the local school authorities to make such reports to the superintendent *651 of education as may be prescribed by law.
"(2) A restriction that any special income and power of taxation as authorized by law for the benefit of the public schools of Mobile County at the time of the adoption of the constitution shall not be disturbed until otherwise provided by the legislature." (248 Ala. at 26, 26 So.2d at 111)
We were careful to note in Board of School Com'rs v. Hahn, 246 Ala. 662, 665, 22 So.2d 91, 93 (1945), that "The limitation on legislative power embodied in Section 270 of the Constitution is restrictive in its scope and purpose, and is to be strictly was ". . . not necessarily referrable Hahn, any act passed in pursuance of § 270 had restrictive application to the Mobile County public schools. We found in that case that the Teacher's Tenure Act was ". . . not necessarily referrable to and dependent upon the provisions of Article XIV . . . which deals largely with the financial set up to maintain a liberal system of public schools. . . ." (246 Ala. at 665, 22 So.2d at 94).
We do not find Title 26, §§ 375(8)-(24) to be an Act "passed in pursuance" of Article XIV. We do not find this Act referrable or dependent upon Article XIV and must, therefore, conclude that requirements of the Act must be met by the Mobile Board of School Commissioners in their school construction contracts.
This case is, therefore, reversed and remanded.
REVERSED AND REMANDED.
HEFLIN, C.J., and BLOODWORTH, MADDOX, ALMON and EMBRY, JJ., concur.
MERRILL, FAULKNER and JONES, JJ., dissent.
MERRILL, Justice (dissenting).
The educational structure of Mobile County is different from that of any other county in Alabama. The majority opinion quotes Section 270 of the Constitution of 1901, as amended by Amendment 111, and will not be quoted here again.
I think the Constitution protected the unique school system of Mobile County from the effects of §§ 375(8)-(24). The Constitution always prevails over a statute. No amount of statutory construction can operate over a constitutional provision. I think the constitutional provision pre-empts any application of the statute as to minimum wages paid on school construction jobs. The School Board of Mobile County ought to be allowed to build its school buildings as economically as possible.
I respectfully dissent.
FAULKNER and JONES, JJ., concur.