# Ex parte Wiley.

## *Mandamus.*

1. *Mandamus ; when proper remedy.*—While *mandamus* will not be awarded to test a disputed title to office, it is the proper remedy, when the rightful incumbent is wrongfully removed or suspended, to compel his restoration.

2. *Same ; what not cause for.* —Where it appears that the removal or suspension is merely irregular, legal cause for it existing, restoration will not be compelled by *mandamus.*

3. *County solicitor ; authority of legislature to provide for suspension or removal of.*—The county solicitor is not a State officer, liable to impeachment, and the Constitution being silent as to the cause and manner of his removal or suspension from office, the legislature may legally provide therefor.

4. *Same ; order of suspension of, what not necessary to validity of.*—It is not necessary that notice of the order of suspension be given to the solicitor, or that the action of the court be invoked by any party. The court acts *ex mero motu,* and of its own knowledge, under the provisions of the statute.

APPEAL from Circuit Court of Pike.

Tried before Hon. HENRY D. CLAYTON.

The petitioner, who was the duly elected, qualified, and acting solicitor of Pike county, was indicted by the grand jury of that county for carrying concealed weapons. On the filing of the indictment, the judge made an order suspending him from office, and appointing another in his stead temporarily. At a subsequent day of the term, petitioner made a motion to vacate and set aside the order suspending him, which the court refused. He now applies for a writ of *mandamus* to compel the vacation of the order.

HENRY C. TOMPKINS, for the motion.—The only power which the judge had to make the order is derived from the act of March 2, 1875, and this act is unconstitutional, for the reason that it deprives the petitioner of one of the rights which are guaranteed by the constitution, without due process of law, because he was not heard before the order was made, and because it imposes a punishment before conviction, while the party must be by law presumed to be innocent.

BRICKELL, C. J.—While the current of authority does not recognize *mandamus* as an appropriate remedy to test a disputed title to a public office, or in the first instance to compel the admission of a claimant, yet if the rightful officer,

[Ex parte Wiley.]

in the actual enjoyment of the office, is wrongfully removed, it is generally regarded as the proper remedy to compel his restoration.—High on Ex. Rem. § 67 ; Ang. & Ames on Cor. § 704 ; Moses on Mandamus, 149. Not only removal, but suspension from office, will warrant the granting of the writ, for, it is said, suspension is a temporary amotion, and under pretense of repeated suspensions, an officer could be entirely excluded.—Ang. & Ames on Cor. § 705 ; Moses on Mandamus, 151. If it appears the removal or suspension is merely irreg-ular, legal cause for it existing, restoration will not be compelled. It would be useless, when the instant of restoration an order of removal or suspension could be legally made. *Rex v. Axbridge*, Cowper, 523 ; Ang. & Ames on Cor. § 705.

The argument of the relator, that he was entitled to notice of the grounds, and the time for making the order of suspension, could be admitted. The failure to give notice would be a mere irregularity, and his restoration would not be compelled, if it appears just cause for making the order existed. The relator avers that when the order was made, an indictment had been preferred against him for carrying concealed weapons, and was pending and undetermined.

The true inquiry is, therefore, whether the finding and pendency of this indictment was cause of suspension, and the answer to the inquiry depends on the validity of the act of March 2, 1875, providing for the suspension of county solicitors while under indictment.—Pamph. Acts 1874-5, p. 241. The Penal Code of 1865-6 first created the office of county solicitor, or, rather, of prosecuting attorney for the county, as he was termed in the statute creating the office, though generally, because of his performance of duties with which the solicitor of the circuit was charged, he was designated county solicitor. Their duties were confined to the conduct of prosecutions before the county court.—R. C. § 3939. The Constitution of 1868, omitting the provision of the former Constitution for the election of as many solicitors as there were judicial circuits, provided : "A solicitor shall be elected in each county in this State, by the qualified voters of such county, who shall reside in the county for which he is elected, and perform such duties as may be required of him by law. He shall hold office for a term of four years, and, in case of vacancy, such vacancy shall be filled by the judge of the circuit, until his successor is elected and qualified."—Const. Art. 6, § 19. The solicitors thus elected performed, within their respective counties, the duties the law imposed on circuit solicitors and the county prosecuting attorneys, these officers being regarded as abrogated by the constitutional provision.—*Reynolds v. McAfee*, 45 Ala. 237.

[Ex parte Wiley.]

The Constitution of 1868 also omitted the provision of the former Constitution, providing for the impeachment and removal from office of all civil officers, whether elected by the people or by the general assembly, or appointed by the governor, and, in lieu of it, substituted the following provision: "All State officers may be impeached for any misdemeanor in office, but judgment shall not extend further than to removal from office, and disqualification to hold office under the authority of this State," &c.—Const. Art. 4, § 23. Who are State officers, within the meaning of this provision, it is not necessary now to determine, but we are clear in the opinion that an officer elected by the vote of a single county, confined in duty to the territorial limits of that county, is not a State officer, subject to impeachment. Throughout our legislation, prior to and since the Constitution of 1868, a broad distinction between such officers, who are properly termed county officers, and officers of the State, or State officers, elected or appointed in a different mode, the sphere of whose duties is larger, may be clearly traced. It may or may not be if the Constitution had prescribed the mode and causes of removal of county solicitor, the legislature could not intervene and either prescribe another mode, or other and different causes.—*Lowe v. Commonwealth,* 3 Metc. Ky. 239; *Brown v. Grover,* 6 Bush. Ky. 1. The Constitution simply creates the office of county solicitor, defines the manner of election, and fixes the duration of the official term. Thus far, the office is beyond legislative control. The office may not be abolished—appointment cannot be substituted for election, nor the power of election transferred from the voters of the county; nor can the official term be enlarged or diminished. The whole matter of removal or suspension from office, the causes for which, and the mode in which it may be effected, not being expressed in the Constitution, is a proper subject of legislation. It is part of the sovereignty of the State, part of the law-making power, and is not either expressly or impliedly withheld from the general assembly. Good government requires that the mode and causes of removal or suspension should be clearly defined. The necessity for the exercise of the power may arise from the misfortune of the officer—from unavoidable accident, as well as from malfeasance or misconduct. The sudden visitation of insanity, or of disease in its varied forms, may incapacitate. Official power should not be indefinitely suspended, awaiting a recovery which may be hopeless, or the expiration of the official term. The act of the officer may incapacitate, rendering the exercise of official power by him improper. The power of the legislature is plenary, and they can determine

[Ex parte Wiley.]

what shall be cause and the mode of removal or suspension.
When they determine, their commands must be enforced.
They may, as they have by the statute under consideration,
declare that it is improper for an officer charged with the
duty of prosecuting criminal offenses, to perform that duty,
while himself resting under a criminal accusation. ·The oc-
cupancy of official position, and the possession of official
power, it may be supposed, would afford the means and op-
portunity of unduly influencing the prosecution against the
officer, and his suspension essential to the purity and cer-
tainty of the administration of the criminal law.

We can not pronounce the enactment, so far as it author-
izes the suspension of a county solicitor under indictment,
violative of the Constitution. The application averring the
pendency of an indictment against the relator, and that it
was the cause of the order of suspension, if the order could
be deemed irregular, *mandamus* is not the remedy for its cor-
rection.

The order is not irregular. The record discloses the cir-
cuit judge pursued the statute strictly. When it became
known to him, as it must have been, when the grand jury
returned the finding into court, and it was ordered to be
filed, the order of suspension was made. It is not contem-
plated by the statute that any motion for the order of sus-
pension shall be made, nor that action by the court shall be
invoked by the State, or by any party. The court acts *mero
motu*, on its own knowledge. Notice to the solicitor is not an
ingredient of the proceeding. There is no disputable fact to
be tried or considered. In this case, the record, which was
of absolute verity, furnished the evidence that the indict-
ment had been presented, and notice would not have availed
the relator. Besides, the record discloses, as we think, that
he had notice. It is averred the order of suspension was
made against his objection, importing his presence when it
was made.

The application must be denied.