178 So. 210

GARNER, County Treasurer, v. McCALL.

6 Div. 215.

Supreme Court of Alabama.

Jan. 13, 1938.

J. Howard Perdue, Jr., and Ernest Matthews, both of Birmingham, for appellant.

Herbert R. Maulitz and Willard McCall, both of Birmingham, for appellee.

FOSTER, Justice.

This is a proceeding to test the right of appellee to employment by the county board of registrars of Jefferson county, without being subject to the requirements of the civil service board having jurisdiction over employees of that county.

Appellee is also a member of that board, but the compensation here sought was for services rendered as a clerk for the board, appointed by the chairman, but whose salary or compensation as such clerk was fixed by the county commission of Jefferson county.

The act of August 20, 1927, Gen. Acts 1927, p. 277, amending Code, § 403, authorizes the chairman of the board of registrars, for that county, "to employ a chief clerk and such other clerical help as may be necessary for the efficient discharge of the duties of his office." It provides for his salary to be fixed by the board of revenue as other chief clerks in the several departments of the county.

The agreed statement of facts states that she was appointed and employed by the chairman, which was approved by the county commission, and by whom her salary was fixed. It does not state that she was named chief clerk nor in fact a clerk, but in paragraph eight it is said that a portion of her duties are clerical, but she is also called upon to act as a member of the board while serving in such clerical capacity.

It is thought that somehow her "technical" knowledge acquired as a member of the board served to place her employment by the chairman in some sort of classification other than those provided for in the Civil Service Act of 1935, p. 691.

But the chairman of the board under the act of 1927, supra, is not given the power to appoint an assistant, except as a chief clerk or other clerical help.

Her special qualifications are only incidental to such employment, and cannot be made to classify the job as a special technical assistant, for which no provision of law appears, as a supposed exception to the civil service requirements.

Her position therefore must be treated as a clerk of the board as provided in the act of 1927, supra.

The Civil Service Act has application to "all employees and appointees of such counties and the municipalities therein and of each and every appointing authority therein and such Board [personnel board under the civil service program] is now given and vested with such power, authority and jurisdiction." Section 2. There are exceptions from its operation, including employees of the boards of education, and of health and library.

The contention is made that appellee is not an appointee or employee of the county or of any appointing authority therein, but that the board of registrars is a state authority, under state supervision and jurisdiction, and intended by the Constitution, § 186, and the law to be removed from local county influences, supervision, or jurisdiction.

If the position referred to is one authorized to be filled by an appointing authority of the county, the Civil Service Act has not been complied with, and the appointment does not justify payment of her compensation out of the county treasury.

So that when finally analyzed, the sole inquiry here is whether the county board of registrars is a county or a state authority.

Its creation is of constitutional origin, section 186, directing that its members shall be appointed and removed, in the discretion of a board of appointment, consisting of the Governor, Auditor, and Commissioner of Agriculture and Industries, to have a term of four years.

Their duties are prescribed by subsection numbered second of section 186, as now enlarged by the act of 1927, supra.

The purpose of all such details is to provide in the county a correct list of persons qualified to vote in such county in all state and county and municipal elections held under authority of state laws.

In counties of less population than 150,000, the probate judge of the county employs assistants and clerical help. In counties of more than 150,000, it is done by the chairman of the board, as we have said, with provision that their salaries must be fixed by the county board of revenue.

All such provisions are superseded by the Civil Service Act, if the appointing power is a county authority, in counties of 200,000 or more, in which that act applies.

We judicially know that Jefferson county is one of more than 200,000 population.

The mere fact that the Constitution makes provision for a county authority does not make it a state institution. Hawkins v. Jefferson County, 233 Ala. 49, 169 So. 720; Ex parte Wiley, 54 Ala. 226.

The Constitution and laws limit the powers and jurisdiction of the board of registrars to the county in which they are appointed to serve.

They are paid by the state at the rate of $5 for each day's attendance upon the sessions of the board. Section 373, Code, as amended by Gen. Acts 1933, Ex. Sess., p. 6. In addition to that the chairman in Jefferson county is paid $3,000 per annum out of the county treasury "in the same manner as other county officers are paid." Act of 1927, supra.

This court has fixed certain standards for determining whether one is a county officer.

If he is elected by the vote of a single county confined in duty to its territory, he is said to be a county, not a state, officer. Ex parte Wiley, supra. And this may be so, though he exercises some duties on behalf of the state. McLendon v. Empire Mining Co., 199 Ala. 482, 74 So. 937.

County officers are defined by some authorities as those by whom the county performs its usual functions; its functions of government. 15 C.J. 481, note 81.

In this instance the members of the board of registration are not elected nor appointed by any authority in the coun-ty, nor paid by the county (except to supplement the salary of the chairman in some counties), and perform functions pertaining to a system of state-wide proportions, though they are limited in their performance to the county for which they were appointed.

Without question, the program of registration of electors and the whole election system in the state as planned by the Constitution is the exercise of a state function. All the details are parts of the state set-up regulating the suffrage of Alabama residents.

In many respects the state exercises a function similar to that provided for in its educational system. Under such set-up all public school funds are state as distinguished from county funds. State v. Tuscaloosa County et al., 233 Ala. 611, 172 So. 892; Williams, Supt. of Banks, et al. v. Pickens County, 230 Ala. 395, 161 So. 507.

Members of the county board of education are elected by the voters of their respective counties, section 87, School Code of 1927, and they appoint a county superintendant of education, section 138, School Code, and treasurer of school funds, section 94, School Code.

But such board for each county is an independent agency of the state for the purposes enumerated by the statute. Turk v. County Board of Education, etc., 222 Ala. 177, 131 So. 436; Greeson Mfg. Co. v. County Board of Education, 217 Ala. 565, 117 So. 163; Kimmons v. Jefferson County Board of Education, 204 Ala. 384, 85 So. 774.

It was said in County Board of Education v. Slaughter, 230 Ala. 229, 160 So. 758, 760, that a treasurer of county school funds "is not in the strict sense of the term a county officer, he is a governmenal agent."

The Civil Service Act referred to excepts from its operation employees of the city and county boards of education.

It does not except employees of the board of registrars, but it only applies to employees and appointees of the county and every appointing authority therein.

We do not think it was necessary to except employees of the board of registrars because, under our authorities, it is a state agency and not a county authority.

The board of registrars is as much an independent agency of the state for a state-wide purpose as the county board of education.

190

We do not think the Legislature meant to divest control of one of its state-wide operations from its agency set up for that purpose, and put it under the supervision of another authority intended only for local jurisdiction, and local purposes, and having only local color.

The judgment of the circuit court is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.