**UNITED STATES of America,**
**Appellant,**

v.

**STATE OF ALABAMA et al., Appellees.**
**No. 17684.**

United States Court of Appeals
Fifth Circuit.
June 16, 1959.

W. Wilson White, Asst. Atty. Gen., Harold H. Greene, Atty., Dept. of Justice, Civil Right Division, Washington, D. C., Hartwell Davis, U. S. Atty., Montgomery, Ala., Joseph M. F. Ryan, Jr., Atty., Department of Justice, Washington, D. C., for appellant.

Nicholas S. Hare, Asst. Atty. Gen., Gordon Madison, Asst. Atty. Gen., MacDonald Gallion, Atty. Gen., Willard Livingston, Asst. Atty. Gen., for appellees.

Charles J. Bloch, Macon, Ga., Lawrence K. Andrews, Union Springs, Ala., Julian Eugene Cook, Atlanta, Ga., amici curiæ.

Before HUTCHESON, Chief Judge, and CAMERON and JONES, Circuit Judges.

HUTCHESON, Chief Judge.

This appeal tests for error the order of the district judge dismissing the complaint as to all the defendants for the reasons stated in his opinion [1] as to each.

This is the record. On February 5, 1959, the United States of America, appellant, filed an action against appellees Grady Rogers, E. P. Livingston, and the Registration Board of Macon County, Alabama. This action was brought under Part IV of the Civil Rights Act of 1957 (P.L. 85–315, 71 Stat. 634, 42 U.S.

1. United States of America v. State of Alabama, 171 F.Supp. 720.

C.A. § 1971)[2] to obtain preventive relief against certain act and practices which deprive citizens of their right to vote on account of race or color.

The complaint specifically alleged the following facts. The appellees, the Registration Board and Rogers and Livingston, sued as members, who, under Alabama law are responsible for registering qualified citizens for voting, have engaged in certain discriminatory acts and practices. Among those practices are the maintenance of separate and segregated registration facilities for negroes; the application of more stringent and more rigid registration standards to negroes than to whites; and various other acts and practices which clearly set forth denial of registration to vote solely on account of race or color. Such discriminatory acts and practices have brought about and perpetuated a great disparity between the respective percentages of white and negro citizens of voting age registered to vote in Macon County, Alabama, despite the fact that negro citizens of voting age in Macon County greatly outnumber white citizens of voting age.[3]

Appellees Rogers and Livingston, who are not before the court as individuals but only as members of the Board of Registration, resigned as registrars of Macon County in Dec., 1958, some two months before this suit was filed. Their resignations were absolute and unconditional, and it was shown by affidavits, depositions and documents, that neither intended to serve again as a member of the Board of Registration, that their resignations had been accepted by the appointing board, and that each had accepted and qualified for another public office. The Registration Board, for the purpose of preventing negroes from registering, became inoperative during long periods of time from 1946 to present. The latest paralysis of that office occurred in December 1958 and was caused by the purported resignation of its only two members.

An injunction was sought to prevent the above named appellees from engaging in the alleged acts, practices, methods or procedures in whatever form, which discriminate against any applicant for registration for voting in Macon County, Alabama, on account of his race or color.

Subsequently on February 23, 1959, appellant amended the original complaint to include as a party defendant the State of Alabama. This amendment averred that the State of Alabama, through its agents, officials and agencies, had engaged in the discriminatory and unlawful practices specified in the complaint. The amendment sought a declaratory judgment of the illegality of these acts and practices and a judgment "enjoining Defendant State of Alabama from engaging in such illegal acts and practices in the future and from interfering with the performance of such acts and practices as may be required by the Constitution and laws of the United States and the decree of this Court".

Appellees filed motions to dismiss.[4] Essentially, appellee State of Alabama,

---

**2.** Sec. 1971(c). "Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice which would deprive any other person of any right or privilege secured by subsec. (a) or (b) of this section, the Attorney General may institute for the United States, or in the name of the United States, a civil action or other proper proceeding for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order. In any proceeding hereunder the United States shall be liable for costs the same as a private person."

**3.** In 1958 white citizens of voting age numbered approximately 3100, whereas negro citizens of voting age numbered approximately 14,000. As of Dec. 1, 1958, white citizens registered to vote in Macon County numbered approximately 3,-016, or approximately 97% of the white population of voting age; and the negro citizens registered to vote in Macon County numbered approximately 1100, or approximately 8% of the negro population of voting age. (Complaint, par. 8, 9, R. 3.)

**4.** In addition to the motions to dismiss appellees filed several other motions including a motion to strike and quash

objected to the action on the ground that the Civil Rights Act of 1957 does not authorize suits against states but only individual "persons" and that the State is not a "person" within the meaning of the Act; that states have exclusive jurisdiction in the field of voting by virtue of the Tenth and Eleventh Amendments to the United States Constitution; that in any event the District Court has no jurisdiction over actions involving a state; and that the Civil Rights Act of 1957 is unconstitutional. Appellees Rogers, Livingston, and the Registration Board objected to the complaint on the ground that the suit was improperly brought against Rogers and Livingston because they had effectively resigned their office as registrars; that the Civil Rights Act of 1957 does not authorize suits against the Registration Board but only against individual persons; that the State of Alabama is an indispensable party; that the action is precluded by the Eleventh Amendment to the Constitution; and that the registration board was not a suable entity under the laws of the State of Alabama.

The court below dismissed the complaint as to all defendants. With respect to appellees Rogers and Livingston, it held that they could not be made defendants because their resignations were effective in all respects, and that under the applicable Alabama law registrars have no obligation to continue to serve until successors were appointed to fill that office. The court dismissed as to the Registration Board on the grounds that it was not a suable legal entity under Alabama law and that in any event the Civil Rights Act of 1957 does not authorize suit against such a board, but permits a suit only against individual persons as members of the Board.

The court held that the action would not lie against the State of Alabama, on the ground that the Civil Rights Act of 1957 did not authorize a suit against a state. Having held, for the reasons stated as to each, that none of the defendants were subject to the suit, the court entered a judgment dismissing it as to each.

Appealing therefrom, plaintiff-appellant is here urging against the judgment three specifications of error:

1. The District Court erred in holding that 42 U.S.C. § 1971(c) does not permit the Attorney General to bring an action against the State of Alabama or the Board of Registrars of Macon County, Alabama.

2. The District Court erred in holding that an action under the Civil Rights Act of 1957 will not lie against registrars who have purported to resign their office, but for whom no successors have been appointed.

3. The District Court erred in holding that the Board of Registrars of Macon County, Alabama, is not a suable legal entity.

and seeking its reversal.

Paramounting the first specification, that the court erred in holding that the statute upon which the suit was based does not permit the Attorney General to bring an action against the State of Alabama, appellant devotes the major portion of its brief to a discussion and argument which, not confining itself to an interpretation and construction of the statute, but, taking far wider range, undertakes to discuss not the actualities of the jurisdiction claimed to have been conferred by the statute but the possibilities in general of conferring upon the federal courts jurisdiction of an action against a state of the kind asserted here.

■ Interesting and engaging as these speculations are, we will not indulge in them here, but, confining ourselves to the sole question for determination, whether the statute supports the jurisdiction asserted, we will state simply but categorically that we agree with the district judge that neither on its face nor in its history, taken alone or in

service, an answer or objection to the motion to produce, and a motion to dissolve the temporary restraining order. The issues on these subsidiary motions were essentially the same as on the motions to dismiss.

connection with civil rights legislation in general, is there any reasonable basis for holding that, in providing "whenever any person, * * *", the congress intended to, or did, provide for suit against a sovereign state.

Without elaborating upon it, as under the settled law of the cases we could do in extenso, it is sufficient for us to simply say that, under the principle which has been, and still is, controlling upon the federal courts, whatever congress might or could do in providing in a civil rights action for conferring federal court jurisdiction over a state, it has never heretofore done so and it has not in terms done so in the statute invoked here.

Absent such specific conferring of jurisdiction, a federal court would not, indeed could not assume jurisdiction over a sovereign state without a precedent determination that, though the jurisdiction had not been expressly conferred, the language of the invoked statute carried the necessary, the unavoidable implication that the congress upon the gravest considerations and after the utmost thought and deliberation had intended to and did confer it.

Reading the statute as one will, such an implication cannot be found in it. For it cannot be reasonably contended that the congress intended in a situation of this kind, where both the complaint and the Alabama statutes themselves, of which we take judicial knowledge, plainly show, that no exception or objection is, or can be, made on any kind of constitutional grounds to the will of the state there expressed, or that there is any need for, or justice in, finding authority under this statute to sue the state itself for the wrongs upon the statute and upon it perpetrated by its allegedly unfaithful servants. Indeed, the gravamen of the complaint against the officers of the state who subvert and pervert the state's will, as expressed in its statutes,[5]

5. In Constantin v. Smith, D.C., 57 F.2d 227, 235, a suit against the governor of the State of Texas, affirmed in Sterling v. Constantin, 287 U.S. 378, 53 S.Ct. 190, 77 L.Ed. 375, the court thus clearly and correctly stated the principles controlling in civil rights suits such as this one:

"Upon the first proposition advanced, that this is a suit against the state, and that as such it may not be maintained, the authorities overwhelm that this is a suit under the first subdivision of section 41, 28 U.S.C.A. § 24, Subd. 1 of the Judicial Code, to redress the deprivation of property arising under the Constitution and laws of the United States (Holt v. Indiana Mfg. Co., 176 U.S. [68] 70, 20 S.Ct. 272, 44 L.Ed. 374). As such it is not a suit against the state, but against persons in their individual capacities, to prevent them from enforcing statutes in themselves unconstitutional, or unconstitutional as attempted to be enforced and applied. In such a suit, when it is found, that 'an individual, acting under the assumed authority of a state, as one of its officers, and under color of its laws, comes into conflict with the superior authority of a valid law of the United States, he is stripped of his representative character, and subjected in his person to the consequences of his individual conduct. The state has no power to import to him any immunity from responsibility to the supreme authority of the United States.' Ex parte Ayers, 123 U.S. [443] 507, 8 S.Ct. 164, 31 L.Ed. 216; Reagan v. Farmers' Loan & Trust Co., 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014; Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714; Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220; Truax v. Raich, 239 U.S. 33, 36 S.Ct. 7, 60 L. Ed. 131; Greene v. Louisville & Int. R. R., 244 U.S. [499] 507, 37 S.Ct. 673, 61 L.Ed. 1280; MacMillan v. [Railroad] Comm., 51 F.2d 400; McLeaish & Co. v. Binford, D.C., 52 F.2d 151. In this suit plaintiffs invoke the exercise of the judicial power of the United States which, vested by the Constitution in its courts, extends to all cases of law and equity arising thereunder. * * *"

"No exertion of this power rests on clearer or more certain grounds than that of its chancery jurisdiction. * * *"

"Of the chancery jurisdiction no phase of it has a better settled basis, a more comprehensive and remedial scope than that which it employs to prevent persons, acting under the authority or color of state laws, from denying the due process and equal protection which the Fourteenth Amendment guarantees. This must necessarily be so, for, independent of each other in their respective spheres as are the state and federal governments, the Constitution of the United States is the supreme law of the land, and the

is that defendants Rogers and Livingston, "in the course of their official duties have discriminated against qualified negro citizens on account of their race or color, and a judgment is sought declaring such past acts and practices to be illegal under the constitution and laws of the United States. Further an order is sought enjoining said defendants so long as they remain responsible for the duties of their office and their successors when appointed and qualified from engaging in such illegal acts and practices in the future."

■ We thus come to the second specification of error that, though, as the district judge expressly found, the two sued as board members, had, some two months before the suit was brought, in good faith resigned their offices and each has taken another state office, they can and should be treated as still members of the board, to say of it that we think the short and simple answer to it is that the supposed need for someone to sue cannot be made, as appellant seeks to make it, to serve as a valid reason for rejecting out of hand the general principle, which underlies and conditions, the existence and exercise of jurisdiction over a person sued in a particular capacity, that such person has that capacity.

In addition to pointing out, as the district judge did, that the remedy does not lie in perverting jurisdictional processes by means and to ends as injudicious as they are unjudicial, by holding one who is not an officer responsible as such, but that it lies in taking appropriate action under Alabama law to compel those authorized to, and responsible for, constituting and filling vacancies in the membership of the Board of Registrars to fill those offices, it is sufficient to say that these considerations aside, we are of the clear opinion that the reasons given by the district judge for rejecting this contention of plaintiff-appellant are sound, indeed unanswerable, and that we approve and adopt them.

■ Of the third and final specification, that the Board of Registrars, without members to be sued or served, constituted a legal entity which must stand in judgment in this suit, we think we need do no more than say that no sound argument is presented or authorities cited against the decision reached and the judgment entered by the district judge. Indeed, no argument is presented in support of the action which the court below was asked, but refused, to take, that is to assume jurisdiction over a board without members, a jurisdiction which, for lack of process it did not and could not assert, except the same argument of Necessity or Desirability made in connection with the second specification. Putting to one side: that such an argument may not serve other than as a cautionary warning against too readily accepting an apparently wrong result as a right one; that it can never take the place of, or serve as real grounds for asserting, jurisdiction, to point out, as the district judge did, that the remedy lies not in trying to sue a memberless board but in a suit against the appointing officers of the state to require the appointment of members to the board, we think it beyond any doubt that there is no basis for the claim that, in ruling as he did, for the reasons that he gave, the district judge in any way erred.

Stating: "It is the individuals on the Board and not the Board itself that conduct the registration; it is the individuals on the Board who may by their 'acts and practices' deprive other persons of rights and privileges secured by the Constitution of the United States; it is the individual members of the Board who are under a constitutional obligation relative to registering qualified applicants of Macon County, Alabama, to vote, therefore, it is for the individual officers that preventive relief—here in the form of injunctions—must be obtained against.", the district judge, citing Handy Cafe, Inc. v. Justices, 1 Cir., 248

courts of the United States, as the repositories of federal judicial power, are compelled to and will assert and vindicate its supremacy, to protect the rights of individuals menaced by personal aggression masked under official power. * * "

F.2d 485; Hewitt v. City of Jacksonville, 5 Cir., 188 F.2d 423; and Charlton v. City of Hialeah, 5 Cir., 188 F.2d 421, to which may be added McSwain v. County Board, D.C., 104 F.Supp. 861 and Graves v. City of Bolivar, D.C., 154 F.Supp. 625, correctly we think, appraised the legal situation arising on the facts and correctly denied the relief asked. In reaching this conclusion we have not overlooked or disregarded Garner v. McCall, 235 Ala. 187, 178 So. 210 and Boswell v. Bethea, 242 Ala. 292, 5 So.2d 816, cited by the appellant as requiring a contrary ruling. We think appellant's reliance on them will not at all do. Indeed, we think that the Boswell case which dealt with an appeal from a judgment of the Circuit Court in a suit against the Board of Registrars, composed of the three members, naming them, explicitly confirms the position of the district judge that, suing a board having no members is as inconceivable in law as suing, as members of a board, persons who are not such, and that under the facts established and found, the judgment must be affirmed.

Affirmed.