On Application for Rehearing

BRYAN, Judge.
This court’s no-opinion order of affir-mance issued on April 13, 2012, is with *361 drawn, and the following opinion is substituted therefor.
On January 26, 2011, Garry Bearden appealed to the supreme court from a summary judgment in favor of Virgil H. Coker, Carolyn Henderson, and Jimmy O’Dell, individually and in their official capacities as members of the Board of Registrars of Calhoun County (collectively referred to as “the board members”), and the Board of Registrars of Calhoun County (“the board”). The supreme court maintained jurisdiction over the appeal until it transferred the appeal to this court pursuant to § 12-2-7(6), Ala.Code 1975, on March 13, 2012. This court issued its original decision, a no-opinion affirmance, on April 13, 2012, and Bearden filed his application for rehearing on April 27, 2012. We grant the application for rehearing, withdraw the no-opinion order of affirmance, substitute this opinion, and affirm the summary judgment in favor of the board members and the board.

Procedural History

On September 15, 2010, Bearden sued the board and the board members. His complaint (“the original complaint”), which was titled “Complaint under Alabama Constitution of 1901, Article I, Sections 6 and 12,” alleged that he had been elected may- or of Weaver in 2008; that, on September 3, 2010, he had received a letter from the board informing him that it had received a complaint asserting that his domicile for voting purposes should be changed from his house in Weaver to his farmhouse in Anniston, that it had investigated the complaint, and that his voting domicile had been changed from his house in Weaver to his farmhouse in Anniston; that that change in his voting domicile would render him ineligible to serve as mayor of Weaver; that the board and the board members had changed his voting domicile •wrongfully and without giving him notice and an opportunity to be heard; and that, “under the Constitution of Alabama, Article I, Sections 6 and 12, he has a constitutionally protected liberty interest in his position as mayor of Weaver.”[1] Based on those allegations, Bearden stated a claim that, by changing his voting domicile without giving him notice and an opportunity to be heard, the board and the board members had deprived him of the “due process guaranteed to the citizens of Alabama under the Alabama Constitution of 1901, Article I, Sections 6 and 1[2].” As relief, the original complaint sought compensatory damages, an attorney fee, costs, and an order setting aside the decision changing his voting domicile. His original complaint did not allege that the board and the board members had deprived him of any rights guaranteed to him by the United States Constitution or federal law, and it did not state that his claim was being brought pursuant to 42 U.S.C. § 1983 (“§ 1983”).
On September 20, 2010, Bearden filed an amended complaint (“the first amended complaint”). The first amended complaint, which was titled “First Amended Complaint under Alabama Constitution of 1901, Article I, Sections 6 and 12,” corrected a typographical error in the original complaint but was, in all material respects, identical to the original complaint.
On October 19, 2010, the board and the board members filed a Rule 12(b)(6), Ala. R. Civ. P., motion to dismiss on the grounds that Bearden’s action constituted an unauthorized appeal from the decision changing his voting domicile; that the trial court lacked subject-matter jurisdiction *362 because, the board and the board members said, § 17-4-3, Ala.Code 1975, vested in the probate court subject-matter jurisdiction over appeals from decisions changing voting domiciles and Bearden had already-filed an appeal with the probate court; and that the board and the board members were entitled to immunity under (1) Article I, § 14, of the Alabama Constitution of 1901, (2) the doctrine of state-agent immunity, (3) the Eleventh Amendment to the United States Constitution, (4) the doctrine of qualified immunity, and (5) the doctrine of judicial immunity. On October 20, 2010, the trial court entered an order directing Bearden to file a response to the motion to dismiss by November 10, 2010.
On November 10, 2010, Bearden filed a written response to the motion to dismiss with an affidavit signed by him attached as an exhibit. In his response, Bearden asserted that his action did not constitute an appeal from the decision changing his voting domicile. Rather, Bearden said, his action was a § 1983 action against the board and the board members for depriving him of due process. The affidavit attached as an exhibit to Bearden’s response stated:
“My name is Garry Bearden. I am over the age of 19 years and I am qualified to give this affidavit. My domicile has been in the City of Weaver, Alabama for my entire adult life. I purchased and have owned and occupied for thirty-three years the property located at 1200 Ridge Drive, Weaver, Alabama 36277. My three children grew up in that house. They each attended Weaver High School while living in that house. I continue to own and occupy that property at the present time. I have never intended to abandon that property as my domicile. I have never intended to leave it with any intention not to return to it.
“In addition, my business is located in Weaver, Alabama at 207-209 East Railroad Street. I also have a residential apartment located at 209 East Railroad Street which I occupy from time to time. My entire life is invested in Weaver, Alabama, as I am also the mayor of that town. In summary, my home for thirty-three years, my business, and an apartment that I use from time to time are all located in Weaver, Alabama.
“Approximately one-half mile from the property at 1200 Ridge Drive is a hobby farm that I have purchased in Anniston, Alabama, at an address of 6511 Weaver Road. Once my children left home, and due to prosperity in my business, I became able to acquire a farm for the purpose of indulging in my hobby as an amateur farmer. I built a house on this property. Sometimes I occupy that house. Sometimes I occupy the house at 1200 Ridge Drive, Weaver, Alabama.
“I am in the business of building and remodeling stores throughout the southeastern United States. I attempt to be back in one of my homes or my apartment each night, though I am usually absent during the day unless I have duties to perform as mayor of the City of Weaver. Persons who have commented on the time I spent at this or that house are probably unaware of my apartment. In any event, my business absences might well appear to others to be an absence from one or the other of my houses.
“I was accused in 2008 during my race for election as mayor of Weaver, Alabama of living someplace other than Weaver, Alabama. Mrs. Sheila Field, my opponent in that 2008 mayoral election, constantly raised this matter. The city council requested an attorney general’s opinion on the point. It stated that the location of my residence was a *363 matter of fact and that the attorney general could give no opinion on where it was located, but recommended an election contest by those who truly questioned my domicile being in Weaver, Alabama (Copy of opinion attached hereto).[2] However, there was no election contest filed during the election or after my victory.
“There was no mention of my domicile being located outside of Weaver, to my knowledge, after my election as Mayor of Weaver, Alabama until I qualified to run for the Alabama State Legislature against the Republican establishment choice and longtime county commissioner and legislator, Randy Wood. Once it appeared that I was running even with or ahead of Mr. Wood in that election, then the domicile issue was once again raised by my political opponents.
“I received a letter from the Calhoun County Board of Registrars stating that it had received a complaint about my domicile being located outside of Weaver, Alabama, had investigated that complaint, and had decided to change my domicile to a place outside of Weaver. I had absolutely no notice and no opportunity to be heard with regard to the so-called complaint, investigation, or decision. I do not know who made the complaint or what was considered by the board in reaching its decision. I do know that none of my family, including me, was in any way consulted, questioned, or allowed to make any statement with regard to where our home is located.”
On December 3, 2010, the board and the board members filed an amended motion to dismiss in which they presented additional argument in support of their immunity defenses.
On December 21, 2010, Bearden filed a second amended complaint, which added a claim pursuant to § 1983. That claim stated:
“Plaintiff avers that the Defendants have -violated his due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and brings this action pursuant to 42 U.S.C. § 1983. Plaintiff claims of the Defendants compensatory damages, attorney’s fees and costs.”
(Emphasis added.)
Following a hearing, the trial court, on January 5, 2011, entered a judgment stating:
“The Plaintiff has filed this action asserting an action under 42 U.S.C. § 1983. The Plaintiff alleges that the Defendants -have deprived him of his right to vote in the City of Weaver without due process of law. The Plaintiff has set forth in his brief in response to the Defendants’ Motion to Dismiss alleging that this action is not an appeal. However, the Court does not see how it can be viewed as anything but an appeal of the decision of the Board of Registrars. He has alleged that the decision of the Board of Registrars is incorrect and is asking this Court to set aside the decision of the Board of Registrars.
“The Defendants allege they received a complaint about Plaintiffs place of residence. They also allege that an investigation took place and they concluded that the Plaintiff lived in Anniston and not Weaver. As a result of this decision, they sent the Plaintiff a letter on September 3, 2010 notifying him of the results and the changing of his voting registration to the Anniston location. For clarification, the Plaintiff has not been dispossessed of his absolute right *364 to vote. He still possesses the right to vote, however his location of voting has been change.
“It is the understanding of this Court that the Plaintiff has filed an appeal of the decision of the Board of Registrars with the Judge of Probate of Calhoun County as provided in Code of Alabama § 17-3-55. Should the Plaintiff be unsuccessful in his appeal to the Probate Court, the statute allows for an appeal to the Circuit Court within a prescribed time period. The Plaintiff has cited and argued a number of cases asserting that an individual may not be deprived of a protected right without an opportunity to be heard. The Court agrees with this argument. The Court also believes that the statute provides the necessary ‘right to be heard’ protection as argued by the Plaintiff. The statute assures by an appeal to Calhoun County Probate Court the constitutional protections required by law. The Plaintiff is presently exercising that right. Therefore, this Court finds no denial of due process. Additionally, assuming against the argument of the Plaintiffs that this is not an appeal under § 17-3-55 this Court is without jurisdiction at this time prior to a final ruling from the Judge of Probate of Calhoun County.
“Therefore, the Motion to Dismiss filed on behalf of the Defendants is hereby GRANTED. This cause is Dismissed with prejudice with costs taxed as paid.”
On January 6, 2011, Bearden filed a postjudgment motion in which he (1) again asserted that his action was not an appeal, (2) again asserted that Alabama law did not authorize an appeal from a decision changing a voter’s voting domicile, (3) notified the trial court that the probate court had dismissed his appeal on the ground that it was not within the probate court’s jurisdiction, and (4) again asserted that his action was a § 1983 action rather than an appeal from the decision to change his voting domicile.
On January 10, 2011, the trial court denied Bearden’s postjudgment motion. Bearden then timely appealed to the supreme court, which, as noted above, transferred the appeal to this court pursuant to § 12-2-7(6) on March 13, 2012.

Standard of Review

Bearden, the board, and the board members assert that the standard of review to be applied in this case is the standard applicable to a judgment granting a Rule 12(b)(6) motion to dismiss. However, Bearden filed an affidavit in opposition to the motion to dismiss, and the trial court did not specifically exclude that affidavit from consideration when it ruled on the motion. When a plaintiff presents evidence to the trial court in opposition to a defendant’s motion to dismiss and the trial court does not specifically exclude that evidence, we must assume that the trial court considered that evidence in ruling on the motion, which automatically converts the motion to dismiss into a summary-judgment motion, and we must review the trial court’s judgment granting that motion under the standard of review applicable to a summary judgment. See Travis v. Ziter, 681 So.2d 1348, 1351 (Ala.1996). In Travis v. Ziter, 681 So.2d at 1351, the supreme court stated:
“If the court considers matters outside the pleadings in ruling on the defendant’s motion to dismiss, then the motion is converted into a motion for summary judgment, regardless of how the motion was styled. Rule 12(b), Ala. R. Civ. P.; Papastefan v. B & L Constr. Co., 356 So.2d 158 (Ala.1978). The circuit court held a hearing to consider the defendants’ motions to dismiss, and the [plaintiffs] presented affidavits from *365 Steve Travis and the clinical psychologist who had been treating him. Because there was no indication during the course of the hearing, or in the circuit court’s order dismissing the plaintiff[s’] claims, that the court had excluded the affidavits, we must assume that the circuit court considered them when it ruled on the motions. Thus, we must analyze the motions to dismiss under the summary judgment standard. Rule 12(b), Ala. R. Civ. P.”
The supreme court recited the standard of review applicable to a summary judgment in Dow v. Alabama Democratic Party, 897 So.2d 1035, 1038-39 (Ala.2004):
“This Court’s review of a summary judgment is de novo. Williams v. State Farm Mut. Auto. Ins. Co., 886 So.2d 72, 74 (Ala.2003). We apply the same standard of review as the trial court applied. Specifically, we must determine whether the movant has made a prima facie showing that no genuine issue of material fact exists and that the movant is entitled to a judgment as a matter of law. Rule 56(c), Ala. R. Civ. P.; Blue Cross & Blue Shield of Alabama v. Hodurski, 899 So.2d 949, 952-53 (Ala.2004). In making such a determination, we must review the evidence in the light most favorable to the nonmovant. Wilson v. Brown, 496 So.2d 756, 758 (Ala.1986). Once the movant makes a prima facie showing that there is no genuine issue of material fact, the burden then shifts to the nonmovant to produce ‘substantial evidence’ as to the existence of a genuine issue of material fact. Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala.1989); Ala. Code 1975, § 12-21-12. ‘[Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.’ West v. Founders Life Assur. Co. of Fla., 547 So.2d 870, 871 (Ala.1989).”

Analysis

Although the original complaint, the first amended complaint, and portions of the second amended complaint could be construed as stating claims based on Alabama law rather than a claim based on § 1983, Bearden consistently argued to the trial court that he was stating a § 1983 claim only. Likewise, he has argued in his briefs on appeal that he stated a § 1983 claim only. Therefore, insofar as Bearden may have stated any claim other than a § 1983 claim, he has waived it by (1) his failure to argue it to the trial court, see Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“This Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.”), and (2) his failure to argue it to this court, see Boshell v. Keith, 418 So.2d 89, 92 (Ala.1982) (“When an appellant fails to argue an issue in its brief, that issue is waived.”).
Bearden first argues that the trial court erred in granting the board and board members’ motion on the ground that his action constituted an appeal to the wrong court from the decision changing his voting domicile because, he says, Alabama law did not afford him an appeal from the decision changing his voting domicile and his action is a § 1983 action rather than an appeal from that decision. We agree.
Section 17-4-3, Ala.Code 1975, is the statute authorizing the board to change a voter’s voting domicile. That statute provides:
“Each county board of registrars shall purge the computerized statewide voter registration list on a continuous basis, whenever it receives and confirms infor *366 mation that a person registered to vote in that county has died, become a nonresident of the state or county, been declared mentally incompetent, been convicted of any offense mentioned in Article VIII of the Constitution of Alabama of 1901 since being registered, or otherwise become disqualified as an elector. A person convicted of a disqualifying criminal offense must be notified by certified mail sent to the voter’s last known address of the board’s intention to strike his or her name from the list. No person convicted of a disqualifying crime may be stricken from the poll list while an appeal from the conviction is pending.
“On the date set in the notice, or at a later date to which the case may have been continued by the board, the board shall proceed to consider the case of the elector whose name it proposes to strike from the registration list and make its determination. Any person whose name is stricken from the list may appeal from the decision of the board without giving security for costs, and the board shall forthwith certify the proceedings to the judge of probate who shall docket the case in the probate court.

“An appeal from the judge of probate shall be as appeals set forth in Section 17-3-55.

“When the board has sufficient evidence furnished it that any elector has permanently moved from one precinct to another within the county, it shall change the elector’s precinct designation in the voter registration list, and shall give notice by mail to the elector of the precinct in which the elector is registered to vote.”

(Emphasis added.)
In IMED Corp. v. Systems Engineering Associates Corp., 602 So.2d 344, 346 (Ala.1992), the supreme court stated:
“The fundamental rule of statutory construction is to ascertain and give effect to the intent of the legislature in enacting the statute. Words used in a statute must be given their natural, plain, ordinary, and commonly understood meaning, and where plain language is used a court is bound to interpret that language to mean exactly what it says. If the language of the statute is unambiguous, then there is no room for judicial construction and the clearly expressed intent of the legislature must be given effect. Tuscaloosa County Comm’n v. Deputy Sheriffs’ Ass’n of Tuscaloosa County, 589 So.2d 687 (Ala.1991).”
The plain language of § 17-4-3 indicates that, although it authorizes an appeal to the probate court from a decision striking a voter’s name from the list of registered voters, it does not authorize an appeal from a decision changing a voter’s voting domicile. Because § 17-4-3 does not authorize an appeal from a decision changing a voter’s voting domicile to the probate court, Bearden’s action cannot constitute an appeal from that decision to the wrong court as the trial court concluded.
Although the trial court’s rationale for its judgment is erroneous, this court, subject to exceptions not applicable here, will affirm the trial court’s judgment on any valid legal ground presented by the record, regardless of whether that ground was considered, or even if it was rejected, by the trial court. See General Motors Corp. v. Stokes Chevrolet, 885 So.2d 119, 124 (Ala.2003). Therefore, we will consider whether the summary judgment in favor of the board and the board members is due to be affirmed on any valid legal ground presented by the record.
Section 1983 provides:
*367 “Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...
(Emphasis added.)
In Garner v. McCall, 235 Ala. 187, 189, 178 So. 210, 212 (1938), the supreme court held that a county board of registrars is an independent agency of the state. In Watkins v. Mitchem, 50 So.3d 485, 489-90 (Ala.Civ.App.2010), this court stated:
“In Will v. Michigan Department of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the United States Supreme Court concluded that a state was not a ‘person’ subject to suit under § 1983. Id. at 65-66. The Court also concluded that actions filed pursuant to § 1983 and asserting claims for damages against government officials or employees in their official capacities were, in essence, claims asserted against the state itself. Thus, the Court concluded, such claims were no different from claims asserted against the state itself. Id. at 71. The Court recognized, however, that a state official in his or her official capacity, when sued for injunctive relief, would be a ‘person’ under § 1983 because ‘ “official-capacity actions for prospective relief are not treated as actions against the State.” ’ Id. at 71 n. 10 (quoting Kentucky v. Graham, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)). See also Griswold v. Alabama Dep’t of Indus. Relations, 903 F.Supp. 1492, 1500 n. 7 (M.D.Ala.1995) (applying the rationale of Will v. Michigan Dep’t of State Police, supra, to conclude that the Alabama Department of Industrial Relations was immune from suit in former employee’s § 1983 action; also recognizing that governmental officials or governmental employees may be sued in their official capacities but only for prospective in-junctive relief).”
Accordingly, because the board is a state agency and the board members are state employees, the board and the board members in their official capacities are not “persons” subject to a § 1983 claim seeking damages. See Will v. Michigan Dep’t of State Police, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), and Watkins v. Mitchem, supra. Therefore, the summary judgment in favor of the board and the board members in their official capacities is due to be affirmed insofar as Bearden sought damages.
A § 1983 claim seeking prospective in-junctive relief against the board members in their official capacities would be a cognizable claim. Id. However, Bearden’s § 1983 claim does not state that he is seeking prospective injunctive relief; it states that he “claims of the Defendants compensatory damages, attorney’s fees and costs” only. Moreover, he did not argue to the trial court that he was seeking prospective injunctive relief and that the motion should be denied on that ground. Consequently, we cannot consider such an argument on appeal. See Ex parte Ryals, 773 So.2d 1011, 1013 (Ala.2000) (“[T]he appellate court can consider an argument against the validity of a summary judgment only to the extent that the record on appeal contains material from the trial court record presenting that argument to the trial court before or at the time of submission of the motion for summary judgment.”). Therefore, the summary judgment in favor of the board mem *368 bers in their official capacities is due to be affirmed insofar as Bearden may have been seeking prospective injunctive relief.
42 U.S.C. § 1988 (“§ 1988”) provides that the prevailing party in a § 1983 action may recover attorney fees. However, because the summary judgment in favor of the board and the board members in their official capacities is due to be affirmed insofar as Bearden sought damages or prospective injunctive relief, Bearden cannot be a prevailing party as to his claims against the board and the board members in their official capacities. Therefore, Bearden cannot recover attorney fees from the board and the board members in their official capacities, see Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) (“[Liability on the merits and responsibility for fees go hand in hand; where a defendant has not been prevailed against, either because of legal immunity or on the merits, § 1988 does not authorize a fee award against that defendant.”), and the summary judgment in favor of the board and the board members in their official capacities is due to be affirmed insofar as he sought attorney fees.
In their individual capacities, the board members asserted in the trial court that they were judicial officers on the ground, among others, that § 17-3-6, Ala. Code 1975, provides: “Registrars are judicial officers and shall act judicially in all matters pertaining to the registration of applicants.” Furthermore, they argued that, because they were judicial officers, the doctrine of judicial immunity barred Bearden’s § 1983 claim against them in their individual capacities. Bearden argues that § 17-3-6 does not confer the status of judicial officers on registrars when they change a voter’s voting domicile because, he says, § 17-3-6 provides that registrars act judicially only when they act on a voter’s initial application for registration and does not provide that they act judicially when they take any subsequent action concerning that voter’s registration. However, if, as Bearden contends, the legislature intended to provide that registrars act as judicial officers only when they act on a voter’s initial application for registration, it would have enacted a statute stating: “Registrars are judicial officers only when they act on an initial application for registration as a voter.” The legislature did not enact such a statute. Rather, the legislature enacted a statute containing language indicating that it intended to provide that registrars are judicial officers when performing any of the functions of registrars. Changing a voter’s voting domicile is a function of registrars. See 17-4-3. Accordingly, we conclude that, by virtue of § 17-3-6, the board members were acting as judicial officers when they changed Bearden’s voting domicile.
Bearden also argues that, even if the board members were acting as judicial officers when they changed his voting domicile, they do not have judicial immunity unless they were acting in good faith when they changed his voting domicile. Bearden further argues that he alleged in his pleadings that the board members were acting in bad faith when they changed his voting domicile and, therefore, that the trial court was required to assume that that allegation was true for purposes of ruling on the board members’ motion to dismiss. However, as discussed above, Bearden’s filing his affidavit in opposition to the motion to dismiss automatically converted the motion to dismiss into a motion for a summary judgment. See Travis v. Ziter, supra. A judicial officer is presumed to have acted in good faith. See Bahakel v. Tate, 503 So.2d 837, 839 (Ala.1987). When a judicial officer moves for a summary judgment based on judicial im *369 munity, the nonmovant must rebut the presumption that the judicial officer acted in good faith with evidence indicating that the judicial officer acted in bad faith. Id. Bearden did not testify in his affidavit that the board members had acted in bad faith in changing his voting domicile. Rather, he testified: “I do not know who made the complaint or what was considered by the board in reaching its decision.” Consequently, Bearden failed to overcome the presumption that the board members had acted in good faith.
Judicial officers are immune from § 1988 claims insofar as the claimants seek damages. See Ray v. Pierson, 386 U.S. 547, 553-55, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). Therefore, the summary judgment in favor of the board members in their individual capacities is due to be affirmed insofar as Bearden sought damages.
Judicial officers are not immune from § 1983 claims insofar as the claimants seek prospective injunctive relief. See Pulliam v. Allen, 466 U.S. 522, 541-42, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984) (“We conclude that judicial immunity is not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity.”). However, as discussed above, we cannot consider the argument that Bearden was seeking prospective injunctive relief and that the motion should have be denied on that ground. See Ex parte Ryals, supra. Therefore, the summary judgment in favor of the board members in their individual capacities is due to be affirmed insofar as Bearden may have been seeking prospective injunctive relief.
As noted above, § 1988 authorizes a prevailing party in a § 1983 action to recover attorney fees. However, because the summary judgment in favor of the board members in their individual capacities must be affirmed insofar as Bearden sought damages or prospective injunctive relief, Bearden cannot be a prevailing party for purposes of § 1988. See Kentucky v. Graham, supra. Accordingly, we must also affirm the summary judgment in favor of the board members in their individual capacities insofar as Bearden sought attorney fees.

Conclusion

For the reasons discussed above, we affirm the summary judgment in favor of the board members and the board.
APPLICATION FOR REHEARING GRANTED; NO-OPINION ORDER OF AFFIRMANCE OF APRIL 13, 2012, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

On Second Application for Rehearing

BRYAN, Judge.
APPLICATION FOR REHEARING OVERRULED.
THOMPSON, P.J., and PITTMAN and THOMAS, JJ., concur.
MOORE, J., dissents, with writing.

. Bearden concedes on pages 2 and 13-14 of his reply brief that, while this appeal was pending, he requested that the board change his voting domicile back to his house in Weaver and that the board did so.

2. The attorney general's opinion is not attached to Bearden’s affidavit.